IN the MATTER OF the FORECLOSURE OF TAX
LIENS PURSUANT TO SECTION 75.521, WISCON-
SIN STATUTES BY WAUSHARA COUNTY, List of
Tax Liens, for 1975 through 1984, Number 1:
WAUSHARA COUNTY, Petitioner-Respondent,†

v.

Sherri L. GRAF, individually, and as Trustee of Basic
Bible Church of America/Order of Almighty God,
Chapter 11000 (formerly the Life Science Church,
Order of Almighty God, Chapter 11000), Herbert C.
Graf, individually and as Trustee of Basic Bible
Church of America/Order of Almighty God, Chapter
11004, and Wilbert J. Kelly, individually and as Trus-
tee of Basic Bible Church of America/Order of
Almighty God, Chapter 11006, Appellants.

Court of Appeals

*No. 89-1281. Submitted on briefs December 8, 1989.—Decided
August 2, 1990.*

(Also reported in 461 N.W.2d 143.)

†Petition to review granted.

For the appellants the cause was submitted on the briefs of *Wilbert J. Kelly* of Wautoma.

For the petitioner-respondent the cause was submitted on the brief of *John E. Thiel* of *Mulcahy & Wherry, S.C.* of Oshkosh.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

SUNDBY, J.   In this appeal, we decide that real estate held in trust for the benefit of an unincorporated church may be exempt from general property taxation under sec. 70.11(4), Stats. We therefore reverse the judgment foreclosing tax liens against the real estate held in trust for the benefit of the Basic Bible Church of

America/Order of Almighty God, Chapter 11000 ("Basic Bible Church") and vesting title to such property in Waushara county.

Section 75.521, Stats., permits the county to enforce the collection of tax liens and take title to tax-delinquent lands. The trustee of the Basic Bible Church contends that lands which she holds in trust for the benefit of the church are exempted from general property taxes under sec. 70.11(4), Stats.[1] If the trustee is correct, she may object to the foreclosure on the grounds that the property is not liable to taxation.[2]

The real estate subject to foreclosure was acquired in 1977 by the Life Science Church, Order of Almighty God, Chapter No. 11000. The name of the church was changed February 25, 1978 when it was issued a new charter by The Basic Bible Church of America, Inc., of Minneapolis, Minnesota. On March 12, 1983, the Basic Bible Church conveyed the real estate to Sherri L. Graf and Barbara J. Pogue in trust for the church's benefit.[3]

It is undisputed that the Basic Bible Church is not incorporated as a religious society under sec. 187.01, Stats.[4] It is not incorporated under sec. 187.09, Stats.[5] It

[1]Section 70.11 provides in part: "Property exempted from general property taxes is: (4) Property owned and used exclusively by . . . churches or religious . . . associations . . .."

[2]Section 75.521(7)(a) provides in part: "Every person having any right, title or interest in . . . any parcel described in [the] list of tax liens, may . . . object[ ] to the proposed foreclosure upon one or more of the following grounds only: 1. That the lands in which such person is interested, described in such list of tax liens, were not liable to taxation . . . at the time the tax . . . for the nonpayment of which the tax lien arises, was levied."

[3]Pogue did not appear in these proceedings. On the tax rolls, the listed owner of the real estate is the Life Science Church, Order of Almighty God, Chapter No. 11000.

[4]Section 187.01(1), Stats., provides:

is not incorporated under chs. 180 or 181, Stats.[6] It is not incorporated in another state.[7] It has not applied to the internal revenue service for designation as an exempt organization under sec. 501(c)(3) of the Internal Revenue Code.[8] The circuit court concluded that consequently there was no entity to claim exemption as a church or religious association; therefore, the Basic Bible Church had not brought itself within the terms of

The members, over 18 years of age, not less than three in number, of any church or society of any religious sect or denomination which shall have been organized in this state and which, at the time, maintains regular public worship may, after due public notice given at some stated meeting of such church, sect or denomination, and any five or more persons of like age, not members of any religious congregation, desirous of organizing a corporation in connection with a church of their own peculiar tenets to be associated therewith, may organize a corporation for religious, charitable or educational purposes in the manner hereinafter provided.

[5]Section 187.09, Stats., provides that existing religious societies shall be deemed legally incorporated by filing a certificate of election or organization with the register of deeds of the proper county.

[6]A church or religious association may incorporate under general incorporation statutes. *United States Nat'l Bank v. Poor Handmaids,* 148 Wis. 613, 615, 135 N.W. 121, 122 (1912).

[7]Section 70.11(4), Stats., does not require that a church or religious association be domiciled or incorporated in Wisconsin, in order that its Wisconsin property be exempt from taxation. *Hahn v. Walworth County,* 14 Wis. 2d 147, 153, 109 N.W.2d 653, 656 (1961).

[8]Section 501 of the Internal Revenue Code provides in part:

(a) An organization described in subsection (c) . . . shall be exempt from taxation under this subtitle . . ..

. . ..

(c) The following organizations are referred to in subsection (a): . . . (3) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable . . . literary, or educational purposes . . ..

sec. 70.11(4), Stats. We conclude that the trial court erred.

The facts as to the Basic Bible Church's organization are undisputed. Therefore, the circuit court's conclusion that the church cannot claim tax exempt status is subject to *de novo* appellate review. *See Green Scapular Crusade v. Town of Palmyra,* 118 Wis. 2d 135, 138, 345 N.W.2d 523, 525 (Ct. App. 1984) ("The facts having been established, the conclusion that the plaintiff is not a religious association is subject to *de novo* appellate review.").

Our appellate review does not, however, include review of a conclusion as to whether the Basic Bible Church's use of the real estate subject to foreclosure was an exclusive religious use. *See Missionaries of La Salette v. Michalski,* 15 Wis. 2d 593, 597, 113 N.W.2d 427, 429 (1962) (The use of property must be an exclusive religious use to qualify for exemption under sec. 70.11(4), Stats.). The circuit court made no finding in this respect. Therefore, we do not decide that the subject property is exempt from taxation under sec. 70.11(4), Stats. We hold only that the church was not required to show that it was incorporated as a religious society or corporation under ch. 187, Stats., or otherwise, to establish that its property is exempt from taxation under sec. 70.11(4).

We recognize that "[o]ne who seeks to have his property exempt from taxation is required to bring himself within the terms of the exemption statute." *Engineers & Scientists v. Milwaukee,* 38 Wis. 2d 550, 553, 157 N.W.2d 572, 574 (1968). The taxpayer has the burden of demonstrating that it is entitled to tax-exempt status. *Church of Scientology of California v. Comm'r.,* 823 F.2d 1310, 1317 (9th Cir. 1987). This is especially

true in situations where, as here, there is a great potential for abuse because a church is controlled by an individual, a family or a small group of individuals. *Id.* The church must come forward with candid disclosure of the facts bearing on the exemption application. *Id.* What the ninth circuit said with respect to the Church of Scientology's request for exemption from income tax under sec. 501(c)(3), I.R.C., is equally applicable to the Basic Bible Church's claim of exemption under sec. 70.11(4), Stats. However, the county, on appeal, does not argue that the church has not brought itself within sec. 70.11(4), Stats., except for the insufficiency of its organization.

The county argued to the circuit court that federal courts of appeals, in numerous decisions, have affirmed commissioner's rulings that organizations such as the Basic Bible Church were tax scams, or methods of tax protestation. *See, e.g., Loving Saviour Church v. United States,* 556 F. Supp. 688 (S.D. 1983), *aff'd,* 728 F.2d 1085 (8th Cir. 1984).[9] The county does not make that argument here and we conclude that it has abandoned its attack on the *bona fides* of the church. *See Reiman Associates v. R/A Advertising,* 102 Wis. 2d 305, 306 n.1, 306 N.W.2d 292, 294 (Ct. App. 1981) (issue not briefed or argued on appeal deemed abandoned).

We turn therefore to the issue of whether the Basic Bible Church was required to show that it was incorporated to establish that it was an "entity" which could claim tax exemption under sec. 70.11(4), Stats. The stat-

---

[9] Claims of exemption from property taxes made by "family" churches or ministries have been uniformly rejected. *See, e.g., Parshall Christian Order v. Board of Review,* 315 N.W.2d 798 (Iowa 1982); *Ideal Life Church of Lake Elmo v. County of Washington,* 304 N.W.2d 308 (Minn. 1981).

ute does not impose the requirement.[10] Ordinarily, this finding would end the case. A combination of factors, however, creates an ambiguity which persuaded the circuit court that to be exempt from taxation under sec. 70.11(4), a church or religious association must be an incorporated entity.

The first factor is the church's failure to take formal action under state or federal law to "charter" the church. The court cited ch. 187, Stats., and I.R.C. sec. 501(c)(3). Ambiguity may be created by the interaction of separate statutes. *State v. Kenyon,* 85 Wis. 2d 36, 49, 270 N.W.2d 160, 166 (1978).

The second factor is the church's failure to seek exemption from federal income tax under I.R.C. sec. 501(c)(3). Section 501(c)(3), I.R.C., however, does not provide for the incorporation or chartering of churches or religious organizations. Tax exemption thereunder is limited to a corporation, community chest, fund, or foundation. The Basic Bible Church does not claim it qualifies as one of the enumerated organizations. No significance can be attached to the church's failure to seek tax exemption under I.R.C. sec. 501(c)(3).

The final factor is the decision in *In re Zarling,* 70 Bankr. 402 (Bankr. E.D. Wis. 1987). In *Zarling,* the court voided a transfer by the debtor of his interest in his farm to the Universal Life Church Charter No. 22406. The court found that the transfer was fraudulent. The court held that because a certificate acknowledging the existence of the Church as a corporation was not

---

[10]Compare with statute construed in *Christian Reformed Church v. City of Grand Rapids,* 303 N.W.2d 913, 916 (Mich. App. 1981), which exempted from taxation real estate owned and occupied by benevolent, charitable, etc., institutions *incorporated under the laws of Michigan.*

filed pursuant to secs. 187.01(2) or 187.09, Stats., prior to the conveyance, the Church-grantee was "a non-existent entity." The court's holding must be viewed in context. The debtor, Zarling, filed a certificate of incorporation under sec. 187.09 five years after the transfer, and attempted to make the filing "nunc pro tunc" the transfer. If *Zarling* is limited to its holding that the filing did not incorporate the Church "nunc pro tunc," it is good law. To the extent that the decision declares all unincorporated churches or unincorporated religious associations "non-existent entit[ies]," we reject it.

We conclude, however, that these factors are sufficient to make it uncertain whether a church or religious organization must be incorporated for its property to be exempt under sec. 70.11(4), Stats. We therefore examine the legislative history of the pertinent statutes. "One of the most valuable extrinsic aids of judicial construction is legislative history." *State v. Vonesh,* 135 Wis. 2d 477, 483, 401 N.W.2d 170, 173 (Ct. App. 1986) (quoting *Milwaukee Co. v. Labor & Ind. Review Comm'n.,* 113 Wis. 2d 199, 204, 335 N.W.2d 412, 415 (Ct. App. 1983)).

The first exemption from taxation of the property of churches and religious organizations appears in sec. 24, ch. 47, Revised Statutes of 1849. Chapter 47 prescribed the procedure by which persons belonging to a church congregation or religious society, "not already incorporated," could incorporate. Section 24 exempted from taxation every church, parsonage and schoolhouse belonging to any religious society, with the land belonging thereto, not to exceed three acres in any one town, village or township, or one city lot. The exemption was not limited to religious societies incorporated under ch. 47.

Chapter 130, Laws of 1868, provided for the assessment of property for taxation and for exemptions there-

from. Section 2, 3d exempted "[p]ersonal property owned by any religious, scientific, literary or benevolent association, used exclusively for the purposes of such association, and the real property necessary for the location and convenience of the buildings of such association . . . not exceeding ten acres . . .." Chapter 130 did not define "association."

Section 2 of ch. 130, Laws of 1868, was incorporated, without substantial change, in sec. 1038, subd. 3, Wisconsin Statutes of 1898. Section 1038, subd. 3 was renumbered sec. 70.11(4), Stats., by sec. 16, ch. 69, Laws of 1921. Throughout its history, the exemption from taxation of property of churches and religious associations has been accorded in substantially the same language. No "linkage" has existed between the exemption statutes and those affecting the organization of churches and religious associations or societies.

Chapter 411, Laws of 1876, provided for the incorporation of religious societies. Apparently this act replaced ch. 47 of the revised statutes of 1849. Chapter 411 is silent as to the taxation or exemption of the property of religious societies incorporated thereunder.

The procedures for the incorporation of religious societies were included in ch. 91, Revised Statutes of 1878. Nash's Wisconsin Annotations (1914), sec. 1990, ch. 91 at 753, states:

> The revisers of 1878 in their note said: "Chapter 411, 1876, is taken to have been intended as a revision of the law for the incorporation of religious societies. The privilege of organizing a corporation is extended to all classes and denominations, it not being supposed the law means to be intolerant of any religious belief or to be partial in its offer of privileges."

The same annotation at page 755 states:

> *"Church" and "Congregation."* A church con-
> sists of those who are communicants, have made a
> public profession of religion and are united by a relig-
> ious bond of common spiritual welfare. It is the spiri-
> tual body, not the legal one. But a religious society or
> congregation, under the statute, is a voluntary associ-
> ation of persons, generally but not necessarily in con-
> nection with a church proper, united for the purpose
> of having a common place of worship and to provide
> a proper teacher to instruct them in doctrines and
> duties, etc. [Citations omitted.]

Thus, the legislature distinguished a church, as the spiritual body, from a religious society, incorporated under the statute, as the legal body of a voluntary association of persons united for religious purposes.

Decisions interpreting ch. 91, Revised Statutes of 1878, make plain that failure of a church or religious organization to incorporate thereunder did not affect the power of the church or religious organization to hold title to property. "Under the repeated decisions of this court, we must hold that the *mere fact* that [a] church or religious society had not yet been incorporated at the time of the delivery of [a] deed in no way frustrated the trust thereby created, if such trust was otherwise valid." *Fadness v. Braunborg,* 73 Wis. 257, 278–79, 41 N.W. 84, 90 (1889) (emphasis in original). The county does not claim that the trust pursuant to which the subject property was conveyed to Sherri L. Graf and Barbara J. Pogue as trustees for the church is invalid.

In *Holm v. Holm,* 81 Wis. 374, 382, 51 N.W. 579, 581 (1892), the facts included that the Norwegian Evangelical Lutheran Church of Roche-a-Cree was a voluntary association until February 7, 1889. The court noted that "[p]rior to that date the title to the churches in

548

which the members of the association worshiped was vested in trustees named in . . . deeds, and their successors in office . . .." The trusts imposed by such deeds appear to have been valid upon the principles stated by this court in *Fadness v. Braunborg . . .." Id.*

In *Franke v. Mann,* 106 Wis. 118, 131, 81 N.W. 1014, 1018-19 (1900), the court said that the power given to trustees of a religious corporation formed under ch. 91, R.S. 1878, was limited to the particular purposes expressly or impliedly named in the act of incorporation. The court further said that "[w]hat has been said is in harmony with the law regarding trusts for religious uses, *whether the trustees be officers of a religious corporation or of an unincorporated ecclesiastical body . . .." Id.* at 131-32, 81 N.W. at 1019 (emphasis added).

It is plain from these decisions that the court did not consider that the legislature, by offering to ecclesiastical bodies the advantages of incorporation, intended to impose corporate structure upon such bodies. The property of unincorporated ecclesiastical bodies was commonly held in trust for the benefit of the members.

The Basic Bible Church established that title to the real estate subject to foreclosure was held in the name of the trustees for the benefit of the church. We conclude that the trust constituted an "entity" which could claim tax exemption under sec. 70.11(4), Stats., for the benefit of the Basic Bible Church. We further conclude that the legislative history of the pertinent statutes does not disclose a legislative intent to require that a church or religious association be incorporated before it may claim tax exemption under sec. 70.11(4).

*By the Court.*—Judgment reversed.

EICH, C.J. (*dissenting*). Graf makes two arguments on this appeal: (1) the trial court "committed reversible error by failing to respond to appellant's jurisdictional challenges"; and (2) the court "did not have the power and authority to hear a case concerning a church's property."

The first argument may be summarized in Graf's own words as follows: "By failing to respond to the challenge to its authority to hear and decide the case,[1] the court—in essence—'demurred to the law' and accepted [sic] to properly pleaded jurisdictional challenge."

Graf's second argument, supported by references to the Bible, is that the court lacked authority to hear a case concerning a church's property because the property "belongs to Jesus Christ"; and since "Jesus Christ is God," and God is "sovereign over all governments, God has sovereign immunity . . . and is not subject to suit."

Summarized, Graf's position is that the court lacked subject matter jurisdiction because her church is exempt from taxation. The burden of showing that property is exempt from taxation is on the party seeking the exemption. *Sisters of St. Mary v. City of Madison,* 89 Wis. 2d 372, 379, 278 N.W.2d 814, 817 (1979).

In my view, Graf has not met that burden. The majority, by searching out and analyzing some fifteen cases and various other authorities—none of them cited or discussed anywhere in Graf's briefs to the court—does

---

[1] Graf's "challenge to the court's jurisdiction," in its entirety, is as follows: "(1) That neither the county, nor the treasurer have jurisdiction to tax a church; (2) That the church could not be forced to pay a tax since that would intrude upon the Sovereignty of God; and (3) That the trial court had no jurisdiction over this case."

it for her. I would not. I would give her *pro se* status every consideration, but I would affirm the judgment.[2]

[2]I agree that we can and should make "reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir. 1983). It is one thing, however, to make "reasonable allowances" for a party's *pro se* status, and quite another to build the case for him or her, brick by brick.